AO 106 (Rev. 04/10) Application for a Search Warrant    AUTHORIZED AND APPROVED/DATE: __EMJ 9/03/2025__

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of  )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No. MJ-25-526-SM
 )
a blue Motorola G Play, cell phone number )
501-592-xxxx, passcode 754112, which was seized from )
the 2005 Chevrolet driven by AYSON MICHAEL MOSS )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference herein.

located in the ___Western___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Coercion and Enticement of a Minor |
| 18 U.S.C. § 2423(b) | Travel with Intent to Engage in Illicit Sexual Conduct |
| 18 U.S.C. § 1201(a) | Kidnapping |

The application is based on these facts:
See the attached Affidavit of FBI Special Agent Ty Franklin, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Ty Franklin, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/4/25

*Judge's signature*

City and state: Oklahoma City, Oklahoma    SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Ty Franklin, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am submitting this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of an electronic device: a blue Motorola G Play, cell phone number 501-592-xxxx, passcode 754112 (hereinafter, the "**TARGET DEVICE**"), which is located at 410 Southwest 5th Street, Lawton, Oklahoma 73501, as further described in Attachment A of this Affidavit, which is incorporated into this Affidavit by reference. I am submitting this Affidavit in support of a search warrant authorizing a search of the **TARGET DEVICE** for the items specified in Attachment B of this Affidavit, wherever they may be found, and the extraction from that property of electronically stored information, as further described in Attachment B of this Affidavit, as instrumentalities, fruits, and evidence of the subsequently-mentioned crimes.

2. I am a Special Agent ("SA") with the FBI. As a SA, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and empowered by law to conduct investigations of, and to make arrests for offenses as set forth in 18 U.S.C. § 2516. I have been employed as a Special Agent with the FBI since May 2024. I first completed 22 weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws and techniques, interviewing strategies and skills, forensic techniques, and a variety of other subjects. I am currently assigned to the Oklahoma City

Division, Lawton Resident Agency, where I have been involved in a wide variety of investigative matters, primarily focused on violent crime, including those associated with child exploitation and child pornography. I am authorized to obtain and execute federal search and seizure warrants. Prior to my employment as a Special Agent, I was an Investigative Specialist with the FBI in Omaha, Nebraska. In this capacity I specialized in physical surveillance in support of active FBI investigations.

3. The facts set forth in this Affidavit are based upon my personal observations, my training and experience, reports provided to me by other law enforcement officers, and statements made by witnesses and other concerned parties. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not included each and every fact known to me concerning this investigation. Based on the facts set forth in this Affidavit, I assert there is probable cause to believe that contraband and evidence of a crime, fruits of a crime, and instrumentalities of violations of 18 U.S.C. § 2422(b)–Coercion and Enticement of a Minor; 18 U.S.C. § 2423(b)–Travel With Intent To Engage in Illicit Sexual Conduct; and 18 U.S.C. § 1201(a)—Kidnapping are presently located within **TARGET DEVICE**, which was previously possessed by Ayson Michael Moss ("Moss").

## DEFINITIONS

4. The following definitions apply to this Affidavit and Attachment B:
    a. "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors in sexually explicit poses or positions.
    b. "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the

2

use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

c. "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, and mobile phones and devices. *See* 18 U.S.C. § 1030(e)(1).

d. "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

e. The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

3

f. "Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. IP addresses can be "dynamic," meaning that the internet service provider assigns a different unique number to a computer every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet.

g. "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h. "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

i. "Records," "documents," and "materials," as used herein, include all information recorded in any form and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

j. "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

k. "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of

4

conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## PROBABLE CAUSE

5. On June 19, 2025, the FBI National Threat Operations Center ("NTOC") received a tip from Amanda McCalister ("McCalister") in regard to an active sexual relationship between a minor victim ("M.V.") and Moss. M.V. is McCalister's daughter, and her date of birth is April 27, 2011. Moss's date of birth is September 13, 2005. McCalister's home address was located in Lawton, Oklahoma; therefore, this tip was routed to the Lawton FBI Resident Agency ("FBI Lawton"). McCalister also made a report to the Lawton Police Department ("LPD"). FBI Lawton took over the investigation after it was determined that Moss lived in Texas and travelled across state lines to engage in sexual acts with M.V.

6. On June 20, 2025, FBI Lawton spoke with McCalister via telephone. On June 18, 2025, McCalister confiscated M.V.'s phone and reviewed the content of M.V.'s phone. McCalister observed messages between M.V. and Moss via TikTok direct message and the message service, TextFree. Many of the messages between M.V. and Moss were sexual in nature and described sexual acts committed between M.V. and Moss. M.V. confirmed to McCalister that M.V. and Moss engaged in sexual intercourse. According to McCalister, M.V. told her Moss was in McCalister's residence, 1011 Southeast Alta Lane, Lawton, Oklahoma 73501, on approximately four occasions unbeknownst to McCalister. According to McCalister, M.V. told her that on at least one of these four occasions, M.V. and Moss engaged in sexual intercourse.

7. McCalister also reported that M.V. and Moss had engaged in video calls on Google Meet and that, when Moss had visited her residence, he had snuck in through M.V.'s window, according

to what M.V. told McCalister. McCalister relayed that M.V. told her that their relationship began on January 7, 2025 and lasted through late June 2025, involving exchanging nude photos and "sexts," as well as having phone sex via video chat. McCalister indicated that Moss had requested this material from M.V. and that, at some point in the relationship between M.V. and Moss, Moss had threatened to murder M.V.'s father.

8. On June 20, 2025, McCalister met with FBI Lawton and provided a cell phone M.V. had used to communicate with Moss. McCalister stated that M.V. and Moss, primarily, communicated via TikTok direct message and TextNow. McCalister informed FBI Lawton that Moss's username on TikTok was "sir_moss24," and she also provided Moss's telephone number.

9. On June 21, 2025, McCalister found a tablet and laptop in M.V.'s room at 1011 Southeast Alta Lane, Lawton, Oklahoma 73501. M.V. had used the tablet to communicate with Moss. M.V. informed Moss that FBI Lawton opened an investigation and possessed her cell phone. McCalister confiscated the tablet and laptop from M.V. On June 23, 2025, McCalister gave possession of the tablet and laptop to FBI Lawton.

10. On June 22, 2025, M.V. ran away from her residence, 1011 Southeast Alta Lane, Lawton, Oklahoma 73501. M.V. went to a convenient store in Lawton, Oklahoma and attempted use a phone but was turned away. M.V. then went to a friend's house, and M.V. used the friend's phone to contact Moss. Moss picked up M.V. from her friend's house and began to drive back to Texas with M.V. McCalister called LPD and made a report that M.V. was kidnapped by Moss. LPD dispatched a police officer to 1011 Southeast Alta Lane, Lawton, Oklahoma 73501. At some point not long thereafter, LPD contacted Moss via telephone. Moss brought M.V. back to 1011 Southeast Alta Lane, Lawton, Oklahoma 73501 the same day. McCalister informed LPD that Moss was not allowed to be on the premises of 1011 Southeast Alta Lane,

Lawton, Oklahoma 73501. A police officer with LPD informed Moss that, if he returned to 1011 Southeast Alta Lane, Lawton, Oklahoma 73501, Moss would be arrested for trespassing. Shortly after M.V. returned to 1011 Southeast Alta Lane, Lawton, Oklahoma 73501, M.V. was taken to Southwestern Medical Center in Lawton, Oklahoma for physical and mental health examinations. M.V. reported to McCalister that she had sex with Moss that morning.

11. On July 9, 2025, FBI Lawton obtained a search warrant for three of M.V.'s devices: a cellphone, tablet, and laptop. Upon a preliminary review of the data following the search warrant for M.V.'s devices, I identified the following items of interest:

   - Numerous photos:
     - A full-frontal nude photo of a male, who appears to be Moss. The photo of the male is cut off at the eyes;
     - One photo of an erect, adult penis; and
     - Two photos of Moss and M.V. lying, in what appears to be, a bed. In both photos, Moss is shirtless. In one photo, M.V. is dressed in a sports bra. In the other photo, M.V. is dressed in a hooded sweatshirt;
   - Numerous messages between Moss and M.V. discussing sexual acts committed between the two of them. The messages below, from March 10, 2025, are one of multiple message strings in which Moss and M.V. discussed sexual acts and used language that appears the sexual act was committed in person by the two of them:
     - March 10, 2025 at 2:28:27 A.M. – Moss: "How do you want me to donate it doggy style missionary hard faster or slope"
     - March 10, 2025 at 2:28:31 A.M. – Moss: "Slow"

- o  March 10, 2025 at 2:29:12 A.M. – M.V. "Missionary, I liked looking at your pretty face last time"
- o  March 10, 2025 at 2:29:31 A.M. – Moss: "Do you want it hard fast or slow"
- o  March 10, 2025 at 2:30:44 A.M. – M.V.: "Slow and hard"
- o  March 10, 2025 at 2:31:08 A.M. – Moss: "Just like last time"
- o  March 10, 2025 at 2:31:43 A.M. – M.V.: "My favorite"
- o  March 10, 2025 at 2:32:12 A.M. – Moss: "I tried to do that a little bit because I know you enjoyed it too just a little bit"
- o  March 10, 2025 at 2:33:08 A.M. – M.V.: "Maybe a little bit"
- o  March 10, 2025 at 2:33:18 A.M. – Moss: "Tell me straight baby"
- o  March 10, 2025 at 2:33:31 A.M. – Moss: "On a scale of one to 10, how much did you enjoy it?"
- o  March 10, 2025 at 2:34:02 A.M. – M.V.: "7"

12. On August 27, 2025, FBI Lawton was notified by McCalister that, at approximately 1:13 a.m. on August 27, 2025, Moss arrived to McCalister's residence, 1011 Southeast Alta Lane, Lawton, Oklahoma 73501. Moss broke a window to M.V.'s room and threatened M.V. in an effort to persuade M.V. to come with him. McCalister shared surveillance camera footage with FBI Lawton that shows Moss attempting to break the window to M.V.'s room. At some point, Moss used a piece of the broken window to manipulate the view of the camera. The visual on the camera was blocked, but the audio still recorded. At one point in the video, Moss states, "I will go in there and fucking kill them. I either go to jail or you come with me."[1]

---

[1] Later that same day, in an interview with Moss, FBI Lawton learned from Moss that he meant, specifically, M.V.'s father when he stated, "I will go in there and fucking kill them."

8

13. McCalister woke up when she heard the commotion as Moss shattered the glass of M.V.'s window. By the time McCalister opened M.V.'s locked door, Moss and M.V. were gone. Shortly after, McCalister contacted LPD, and LPD arrived at her residence. Because Moss lives in Lamar County, Texas, LPD dispatch contacted the Lamar County Sheriff's Office ("LCSO") and briefed them on the situation.

14. The LCSO positioned a sheriff's deputy near Moss's residence. At approximately 5:05 a.m. on August 27, 2025, LCSO pulled over Moss while he was driving a silver 2005 Chevrolet Silverado, bearing Texas license plate XDJ7506, with M.V. as a passenger. Moss was subsequently taken into custody by the LCSO.

15. On August 27, 2025, FBI Lawton interviewed Moss at the LCSO. Moss admitted to FBI Lawton that he knew M.V. was a minor when they had sexual intercourse. Moss admitted that, on at least two occasions, he drove from Powderly, Texas to Lawton, Oklahoma to engage in sexual intercourse with M.V. and that he, in fact, had sexual intercourse with M.V. on those occasions. On at least one of those occasions, Moss told M.V. that he was going to purchase condoms for them, and he admitted to purchasing the condoms in his interview.

16. Moss admitted that, on August 27, 2025, he travelled from Powderly, Texas to Lawton, Oklahoma with the intent of bringing M.V. back to Powderly, Texas. Moss intended to engage in sexual intercourse with M.V. upon their arrival at his residence in Powderly, Texas on August 27, 2025. Moss admitted that he knew his conduct in taking M.V. from Lawton, Oklahoma to Powderly, Texas on August 27, 2025 was going to get him arrested. Moss further admitted that he used a threat to coerce M.V. into leaving her house with him. When asked about that threat in his interview, Moss reiterated that he meant that threat. Moss stated that he kidnapped M.V. to save her from her parents and to have sexual intercourse with her.

17. During the interview on August 27, 2025, Moss also disclosed to FBI Lawton information regarding two cell phones. First, he stated that he used an Apple iPhone 14, telephone number 903-649-1282, passcode 754112 (hereinafter, "903-649-1282") to communicate with M.V. Moss stated the 903-649-1282 cell phone was located inside 717 County Road 44190, Powderly, Texas 75473, near his bed and on a charger.

18. Additionally, Moss stated that he had purchased the **TARGET DEVICE**. Upon kidnapping M.V. on August 27, 2025, Moss gave the **TARGET DEVICE** to M.V. Moss disclosed to FBI that the **TARGET DEVICE** might still be in the 2005 Chevrolet Silverado he had been driving. FBI Lawton obtained consent to search that vehicle from Moss. At that time, the 2005 Chevrolet Silverado was located in the parking lot of LCSO. Later, on August 27, 2025, FBI Lawton searched the vehicle and recovered the **TARGET DEVICE**.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. I assert there is probable cause to believe that things that were once stored on the **TARGET DEVICE** may still be stored there, for at least the following reasons:

    a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic

tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICE** was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET DEVICE** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after

       examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their uses, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examinations of the **TARGET DEVICE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to subjecting the **TARGET DEVICE** to human inspection in order to determine whether it is evidence described by the warrant.

23. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for this Court to authorize the execution of the warrant at any time in the day or night.

## CONCLUSION

24. I submit that this Affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICE** described in Attachment A to seek the items described in Attachment B.

Ty Franklin
Special Agent, FBI

Sworn to and subscribed before me in my presence.

SUZANNE MITCHELL
United States Magistrate Judge

Sept. 4, 2025

## ATTACHMENT A

## DESCRIPTION OF THE DEVICE

1. The property to be searched is described as a blue Motorola G Play, cell phone number 501-592-xxxx, passcode 754112 (hereinafter, the "**TARGET DEVICE**"), which is located at 410 Southwest 5th Street, Lawton, Oklahoma 73501. This warrant authorizes the forensic examination of the **TARGET DEVICE** for the purpose of identifying the electronically stored information described in Attachment B.

 

## **ATTACHMENT B**

## **LIST OF ITEMS TO BE SEIZED**

Contraband, evidence, fruits, and instrumentalities related to Moss's violations of 18 U.S.C. § 2422(b)–Coercion and Enticement of a Minor; 18 U.S.C. § 2423(b)–Travel With Intent To Engage in Illicit Sexual Conduct; and 18 U.S.C. § 1201(a)—Kidnapping in any form, including, but not limited to: .

1. Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography.

2. Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3. Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, distribution or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4. In any format and medium, all originals, computer files, copies, and negatives of child pornography as defined in 18 U.S.C. § 2256(8), visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

5. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography as defined in 18 U.S.C. § 2256(8) or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8. Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

9. Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

10. Any and all visual depictions of minors engaging in sexually explicit conduct.

11. Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).